**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | . | |
| **v.** | . | **Criminal No.  JRR-23-198** |
| **TONY JOSHUA** | . | |

**MOTION TO SUPPRESS THE FRUITS OF THE JANUARY 2023 SEARCH
& REQUEST FOR A *FRANKS* HEARING**

Mr. Tony Joshua, by undersigned counsel, hereby requests a *Franks* hearing and moves to suppress any and all evidence discovered during the January 23, 2023 search of his home.  As detailed below, the application submitted in support of the warrant to search Mr. Joshua's home was false and misleading.  In particular, the application stated that the Baltimore Police Department had not yet seized any of Mr. Joshua's firearms, a fact that was objectively false.  The false and misleading statements were intended to induce the magistrate judge to find probable cause that the firearms described in the warrant application would in fact be in Mr. Joshua's home.

**Contents**

Introduction ................................................................................................................................ 2

Factual Background ..................................................................................................................... 3

Legal Analysis ............................................................................................................................ 6

   I.    Mr. Joshua is entitled to a *Franks* hearing based on the 2023 search warrant affidavit. ..... 6

     A.   To obtain a hearing, Mr. Joshua must make a preliminary showing of falsity and materiality. ............................................................................................................................... 6

     B.   Mr. Joshua has identified an incorrect statement in the warrant application. ................. 8

     C.   The false statements were material. ............................................................................. 9

   II.   The evidence obtained as a result of the 2023 search should be excluded as a tainted fruit of the warrantless package searches. ................................................................................. 12

Conclusion ................................................................................................................................ 13

**Introduction**

This motion requests the seizure of the items recovered during the 2023 search of Mr. Joshua's residence.  Primarily, Mr. Joshua requests that the Court hold a "*Franks* hearing"[1] to determine whether law enforcement deliberately or recklessly included the falsehoods and/or misleading information in a warrant application.

Mr. Joshua was being simultaneously investigated by both the Baltimore Police Department (BPD) and Homeland Security Investigations (HSI) (which coordinated with the Maryland State Police (MSP)).  The BPD was investigating him because he allegedly threatened his wife with a gun.  And HSI was separately investigating him due to indications that he had purchased gun parts online.  On December 1, 2022, the BPD searched Mr. Joshua's house, during which they discovered and seized firearms, ammunition, and other related evidence.  Exhibit 1 (2022 Search Warrant).  Less than two months later, on January 23, 2023, MSP applied for, and received, another search warrant for Mr. Joshua's home.  Exhibit 2 (2023 Search Warrant).  That second search warrant application detailed the incidents between Mr. Joshua and his wife, along with describing the investigation into Mr. Joshua's online orders, including several warrantless searches of mail addressed to Mr. Joshua's residence.  Exhibit 2 at 2-4.  Importantly for purposes of this motion, the January 2023 search warrant application stated that, during the December 2022 investigation of Mr. Joshua, "BPD ha[d] made no attempts to retrieve the above firearms from the residence," that "none were seized at the time of the above incident," and that "there are no records of seizure. . . by . . . JOSHUA."  Ex. 2 at 4.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

None of this was true.  BPD had not only attempted to retrieve firearms from Mr. Joshua' residence, but had actually seized such evidence.  And there are records of that seizure, including the return attached to the December 2022 warrant.  Exhibit 1 at 7.

As detailed below, these apparent misstatements should result in suppression of the evidence seized during the January 2023 search.  That is because the falsehoods were material, *i.e.*, affected the magistrate judge's decision, as it was necessary for law enforcement to show that probable cause existed to believe that there were firearms in Mr. Joshua's home in January 2023, even though BPD had recently been to his home and seized firearms.  But, first, this Court should hold a *Franks* hearing to receive evidence on deliberate or reckless nature of the falsehoods. Following that hearing, the Court should order suppression.  Additionally or alternatively, this Court should suppress the evidence as the fruit of the unlawful 2023 warrantless searches of packages.

## Factual Background

Mr. Joshua has been charged with two counts of felon in possession.  This suppression motion pertains to Count II.[2]

Mr. Joshua's house was searched on two separate occasions.  This motion relates to the search of Mr. Joshua's residence on January 23, 2023.

The 2022 Search:  In late 2022, the Baltimore Police Department (BPD) investigated a family disturbance in Mr. Joshua's family. Exhibit 1 at 5. Mr. Joshua's wife, C.W., reported that she and her husband had some altercations, during which Mr. Joshua allegedly threatened her with a firearm.  *Id.*  BPD then obtained an arrest warrant for Mr. Joshua, but not a search warrant.  Ex.

---

[2] Another suppression motion pertaining to Count I is being concurrently filed ("Motion to Suppress Fruits of the December 2022 Searches." Undersigned counsel respectfully recommends reading the 2022 search motion first as it will provide context for this instant motion.

1.   BPD executed that arrest warrant at Mr. Joshua's house on December 1, 2022. Ex. 1 at 7. Although the police almost immediately secured Mr. Joshua, they nonetheless conducted a purported "*Buie* sweep" of his house, including his basement.[3]

Based on what law enforcement saw in the basement, law enforcement sought and obtained a search warrant for Mr. Joshua's home. Exhibit 1. The search warrant detailed the alleged altercations between C.W. and Mr. Joshua, along with explaining that the police had seen what appeared to be a firearm in Mr. Joshua's basement when executing the arrest warrant. Ex. 2-4. That warrant was executed the same day, a few hours after Mr. Joshua's arrest.[4] Accordingly to the search warrant return, law enforcement seized multiple firearms and ammunition from Mr. Joshua's house:



_____

[3] As detailed in a concurrently filed suppression motion (n. 2), this warrantless search exceeded the scope of a proper *Buie* sweep both because law enforcement had no reason to believe there was a dangerous person in the basement and because they did a far more thorough search than the "cursory inspection" permitted under *Buie*. *Maryland v. Buie*, 494 U.S. 325 (1990).

[4] Mr. Joshua was arrested shortly before 8:00 a.m. on December 1, 2022. The search warrant was obtained at 11:31 a.m. and executed at 12:57 p.m. on December 1, 2022. Exhibit 1 at 6-7.

Exhibit 1 at 7.

The 2023 Search:  Around the same time that the BPD was investigating the altercations between C.W. and Mr. Joshua, MSP was also investigating Mr. Joshua for firearm offenses.  In 2021 and 2022, law enforcement had intercepted and searched packages intended for Mr. Joshua's address that law enforcement believed contained items for firearms manufacturing.  Officers did not have a warrant to search these packages and, as explained in the concurrently filed "Motion to Suppress Due to Warrantless Searches of Packages," Mr. Joshua maintains that law enforcement also lacked the required "reasonable cause to suspect there is merchandise which was imported contrary to law."  19 U.S.C. § 482(a).

On January 18, 2023, Corporal Choe of MSP submitted an application for a warrant to search Mr. Joshua's house.  The warrant included the following information:

- Law enforcement had searched and intercepted packages addressed to Mr. Joshua's home on January 21, 2021 and August 4, 2022.

- Law enforcement had, on two separate occasions, subpoenaed records of Mr. Joshua's online purchases.  One subpoena showed that Mr. Joshua alleged "had firearms related items shipped to the TARGET ADDRESS in 2021."  The other showed that Mr. Joshua had placed several "orders of varying firearms parts . . . starting in December 2020 and his last order was due to arrive on January 2, 2023."

- The warrant also repeated the details of Mr. Joshua's alleged altercations with C.W. in November 2022.

Ex. 2 at 2-4.

Crucially for purposes of this motion, immediately after detailing BPD's investigation, the affidavit stated the following:

"BPD has made no attempts to retrieve the above firearms from the residence.  It is believed that the above listed firearms are still in the TARGET RESIDENCE [Mr. Joshua's house], none were seized at the time of the above incident and there are no records of seizure or forfeiture by the victim and/or JOSHUA."

Ex. 2 at 4.

An Anne Arundel County District Court judge issued the search warrant.  Ex. 2 at 6-7. During the subsequent search, law enforcement seized additional firearms and ammunition.  Ex. 2 at 11.

<u>Legal Analysis</u>

I. **Mr. Joshua is entitled to a *Franks* hearing based on the 2023 search warrant affidavit.**

Mr. Joshua requests a "*Franks*" hearing and, ultimately, an order suppressing the evidence discovered during the January 18, 2023 search.  Suppression is warranted because application for the search warrant contained material false statements (or, at the very least, misleading statements or omissions).  That is because the warrant indicated that BPD had not seized any firearms from Mr. Joshua's home following the 2022 domestic incidents and searches when, in fact, BPD had thoroughly searched the home and seized several firearms and related evidence.

A. **To obtain a hearing, Mr. Joshua must make a preliminary showing of falsity and materiality.**

"The veracity of the assertions supporting probable cause is integral to the criminal justice system." *United States v. Cortina*, 630 F.2d 1207, 1213 (7th Cir. 1980).  "It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit." *United States v. Troxel*, 564 F. Supp. 2d 1235, 1243 (D. Kan. 2008) (quoting *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001)). "A search warrant may be invalid if the issuing judge's probable cause determination was based on an affidavit containing false or omitted statements made knowingly and intentionally or with

reckless disregard for the truth." *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001).

The legal framework for ascertaining when a false or misleading statement or omission invalidates a search warrant was laid out in *Franks v. Delaware*, 438 U.S. 154 (1978). Ultimately, *Franks* requires a criminal defendant to satisfy two elements by a preponderance of evidence. First, he must show "that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (cleaned up). Second, he must show "that the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause." *Id.* (cleaned up).

But the question before the Court right now is not whether Mr. Joshua has met these elements completely, but rather whether he is entitled to a "*Franks* hearing" to explore this issue further. At this motion stage, Mr. Joshua need not ultimately prove the intentionality or recklessness of the false or misleading statements and omissions in the warrant application. Rather, he needs to make a "substantial preliminary showing" of falsity and that the statements or omissions were material. *United States v. Somerlock*, 602 F. Supp. 3d 791, 800 (D. Md. 2022) (citation omitted); *see also United States v. Taylor*, 63 F.4th 637, 649 (7th Cir. 2023). If Mr. Joshua's motion and evidence satisfies these preliminary showings, then "the Fourth Amendment requires an evidentiary hearing on the veracity and completeness of that affidavit, and ultimately on the constitutionality of the search." *Taylor*, 63 F.4th at 649 (citations and quotation marks omitted); *see also Cortina*, 630 F.2d at 1213 ("[W]here the defendant makes a substantial preliminary showing of falsity, 'and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.'" (quoting *Franks*, 438 U.S. at 156)).

As detailed below, Mr. Joshua can make an a sufficient showing on both questions. The

paragraph in the search warrant affidavit indicating that BPD did not remove any firearms from Mr. Joshua's house following BPD's 2022 investigation was false.  And that statement was material because, if the warrant application had accurately relayed BPD's prior investigation, there would not have been probable cause to believe that the firearms and related items detailed in the application were located in Mr. Joshua's home.

### B. Mr. Joshua has identified an incorrect statement in the warrant application.

As noted, to obtain a hearing, Mr. Joshua must first make a preliminary showing of falsity or misrepresentation, either through statements or omissions.  This requires Mr. Joshua must (1) "identify specific portions of the warrant affidavit as intentional or reckless misrepresentations," and (2) substantiate the claim of falsity or misrepresentation with evidence.  *Taylor*, 63 F.4th at 650.  "[A] showing of falsity 'cannot be conclusory and must rest on affidavits or other evidence.'" *Somerlock*, 602 F. Supp. 3d at 801 (quoting *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019)).  Mr. Joshua can easily satisfy these requirements.

The specific portion of the warrant affidavit challenged here is the paragraph about whether BPD had actually seized firearms from Mr. Joshua's house.  In particular, Mr. Joshua invokes with the following paragraph in the warrant affidavit:

> "BPD has made no attempts to retrieve the above firearms from the residence.  It is believed that the above listed firearms are still in the TARGET RESIDENCE [Mr. Joshua's house], none were seized at the time of the above incident and there are no records of seizure or forfeiture by the victim and/or JOSHUA."

Ex. 2 at 4.

This paragraph is not true or, at the very least, misleading.  The thrust and effect of this paragraph is to suggest to the issuing judge that Mr. Joshua was known to have firearms, but none had ever been seized from him, notwithstanding BPD's prior investigation.  But that is not true. BPD did in fact search Mr. Joshua's house and they seized a firearm, ammunition, and other related

items.  Ex. 1.  Similarly, while the affidavit states that "there are no records of seizure or forfeiture by the victim and/or JOSHUA," that is contradicted by the search warrant return from the December 1, 2022 search that described what was seized.  Ex. 1 at 7.  And there is also body camera footage showing the police searching Mr. Joshua's house and confiscating a firearm and ammunition.

Thus, Mr. Joshua has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  *Somerlock*, 602 F. Supp. 3d at 801 (quoting *Franks*, 438 U.S. at 155-56).

In addition to making a preliminary showing of falsity, Mr. Joshua must also show that the false or misleading statements or omissions were material.  He meets that standard here.  If the warrant application had been accurate about BPD's prior search and seizure of firearms, the issuing judge would not have had probable cause to believe that there would be evidence of firearms in Mr. Joshua's house at the time of the January 2023 warrant's execution.

To evaluate materiality, the Court should "correct" the affidavit and then determine whether there was sufficient probable cause with it so corrected.  *See Perkins*, 850 F.3d at 1119.  This means the Court should excise the false or misleading portions of the affidavit, add in the wrongfully omitted information, and then evaluate whether there was sufficient probable cause to issue the search warrant with these changes.  *Troxel*, 564 F. Supp. 2d at 1244-45; *see also Perkins*, 850 F.3d at 1119; *Somerlock*, 602 F. Supp. 3d at 800.  As applied here, that means the Court should (a) delete the challenged paragraph in the warrant indicating that no firearms were seized by BPD; (b) add in a sentence that says something like: "On December 1, 2022, BPD searched Mr. Joshua's residence, both with and without a warrant, and seized an air pistol,  a firearm, ammunition, and

firearms-related paraphernalia;" and (c) evaluate the affidavit with these changes. Once these changes are made, the January 2023 warrant application does not establish probable cause to search Mr. Joshua's home.

For a search warrant to be valid, there needs to be not only probable cause that a crime has occurred, but also probable cause that evidence of that crime will be present in the area to be searched when the warrant is executed. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Specifically, there must be "probable cause to believe that [evidence] *will be there when the search warrant is executed*." *Id.* at 96 (emphasis added) (citation omitted). Stated otherwise, there must be probable cause that "contraband, evidence of a crime, or a fugitive *will be* on the described premises . . . when the warrant is executed." *Id.* (emphasis in original).

Here, the false and misleading information was crucial to the question of whether the alleged contraband described in the warrant application would in fact be at Mr. Joshua's house when the MPD executed the warrant. Effectively all of the firearms and firearms-related evidence described in the warrant would or should have been in Mr. Joshua's house prior to BPD's December 1, 2022 search. The warrant describes packages intercepted in January and August 2022, a domestic incident that occurred in November 2022, and sales that occurred in 2020, 2021, and 2022. Ex. 2 at 2-4.[6] If the warrant application had been accurate—stating that BPD had

---

[6] The warrant does say that the sales "start[ed] in December 2020" and that the "last order was due to arrive on January 2, 2023." Ex. 2 at 4. But the warrant does not elaborate on whether that order was in fact delivered, or rather whether it was intercepted. In other words, the warrant suggests that the January 2, 2023 package was never actually delivered to Mr. Joshua's house, such that there was no reason to believe additional packages were delivered or existed after the December search.

recently searched Mr. Joshua's home and seized firearms and related evidence—then there would not have been "probable cause to believe that [the firearms would] be there when the search warrant [was] executed." *Grubbs*, 547 U.S. at 96 (citations omitted). Instead, the judge would have reasonably inferred that any firearms that existed had already been seized. Indeed, evidence "that a complete search was already conducted" is the type of information that "a reasonable person would have known . . . was the kind of thing the judge would wish to know." *Troxel*, 564 F. Supp. 2d at 1246 (citations and quotation marks omitted).

This case is quite similar to *Troxel*, 564 F. Supp. 2d 1235, a case that found a *Franks* error and ordered suppression. There, officers submitted a search warrant application to search Mr. Troxel's home in which they represented that they had previously conducted "a walk through" of the house and had seen, in plain view, drugs and drug paraphernalia. *Id.* at 1244-45. They obtained that search warrant and searched the home again, where they found additional drugs and paraphernalia. *Id.* at 1240. The court ultimately suppressed evidence on *Franks* grounds. *Id.* at 1243-51. The district court found that the search warrant contained a false or misleading statement, and omitted crucial information, because in actuality law enforcement had done "a complete and thorough search" of the house, not a limited "walk through." *Id.* at 1244-45. And the district court said that the false or misleading statements were material because it defeated the probable cause to believe that contraband would be found in the house. *Id.* at 1248-50. Per the court, "because a complete and thorough search was conducted [previously], there was no reason to believe that any more or new contraband or evidence would be found." *Id.* at 1248. "The initial complete and thorough search dissipated the probable cause, making the second search unreasonable." *Id.*

This case is similar in relevant respects to *Troxel*. In both cases, the officers submitted a search warrant that was inaccurate, or at least misleading, about what happened during a prior

search of the targeted home.  And, in both cases, the effect of those misleading or incorrect statements was to give the issuing judge reason to believe that there would still be contraband in the home, notwithstanding a prior search.  In *Troxel*, the false claim that there was only a "walk through" and not a complete search suggested officers might have missed something, 564 F. Supp. 2d at 1244-45; here, the warrant's incorrect statement that that BPD had not seized anything from Mr. Joshua's home gave cause to believe that the firearms described in the warrant application would still be there.  But, just as was true in *Troxel*, the "complete and thorough search" completed by BPD in December—during they did in fact find and seize firearms and related evidence— "dissipated" the probable cause to believe the evidence described in the January 2023 application would still be in the house.   564 F. Supp. 2d at 1248.

In short, because the false and misleading statements and omissions went to the heart of the question of whether there was probable cause to believe the firearms described in the warrant application were in fact in Mr. Joshua's house, the statements and omissions were in fact material, thus satisfying the second prong of the *Franks* inquiry.

## II.     The evidence obtained as a result of the 2023 search should be excluded as a tainted fruit of the warrantless package searches.

As detailed in Mr. Joshua's concurrently filed "Motion to Suppress due to Warrantless Searches of Packages," law enforcement's searches of packages addressed to Mr. Joshua's home violated the "border search" exception to the warrant requirement and 19 U.S.C. § 482.  The findings of those unlawful searches ultimately led the government to conduct the 2023 search at issue in this motion, and thus the evidence seized during this search should also be suppressed. The existence of the 2023 search warrant does not save the government from the consequences of suppression because the 2023 search warrant application relied heavily on those unlawful searches,

and thus was not independent.  *See United States v. Hill*, 776 F.3d 243 (4th Cir. 2015); *see also United States v. Aigbekaen*, 943 F.3d 713, 724-25 (4th Cir. 2019).

## Conclusion

Because Mr. Joshua had made a substantial showing of an intentional or reckless falsehood, misleading statement, or omission, and because those statements and/or omissions were material, this Court should hold a *Franks* hearing to determine whether officers acted intentionally or recklessly when erroneously telling the judge that issued the 2023 warrant that BPD had not seized any firearms from Mr. Joshua's house.   And, following that hearing, this Court should grant Mr. Joshua's motion and order the suppression of all of the items seized as part of the January 2023 search, both because of the intentional or reckless falsehood and/or misleading warrant application and as a fruit of the unlawful package searches.

Respectfully submitted,

_____/s/_____
Claire Madill
Sedira Banan
Assistant Federal Public Defenders
Office of the Federal Public Defender
Tower II – 9th Floor
100 South Charles Street
Baltimore, Maryland 21201
(410)  962-3962 (t)
(410)  962-3976 (f)
Claire_Madill@fd.org
Sedira_Banan@fd.org